IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| APACHE TRIBE OF OKLAHOMA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-10-646-D |
| | ) | |
| BETSY ANN BROWN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court are the following motions: Defendant Foshee & Yaffe Law Firm's Motion to Dismiss Amended Complaint [Doc. No. 111]; Defendants Betsy Ann Brown and Law Offices of Brown & Cullimore's Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 112]; and Defendant Yancy Redcorn's Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 113].[1] The Motions seek dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), and Fed. R. Civ. P. 9(b). Plaintiff Apache Tribe of Oklahoma (the "Tribe") has timely responded in opposition to the Motions, which are fully briefed and at issue.[2]

The Tribe invokes federal jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) to assert a claim that Defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68, by utilizing fraudulent and illegal practices to conduct tribal

---

[1] These motions also incorporate Defendant John H. Graves' Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 110], which became moot upon Plaintiff's voluntary dismissal of Defendant Graves pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). *See* Notice of Dismissal of John H. Graves [Doc. No. 126].

[2] Plaintiff filed separate responses to the motions of Defendant Foshee & Yaffe Law Firm [Doc. No. 118], Defendants Brown and Law Offices of Brown & Cullimore [Doc. No. 121], Defendant Redcorn [Doc. No. 119], and Defendant Graves [Doc. No. 120]. Reply briefs were filed by Defendants Brown and Law Offices of Brown & Cullimore [Doc. No. 124] and Defendant Foshee & Yaffee Law Firm [Doc. No. 125].

business without proper authority from the Tribe. Specifically, the Tribe alleges in the Amended Complaint a violation of § 1962(c) by the "Co-Conspirators" or "Co-Conspirator Defendants," who are identified as the individual defendants (Betsy Ann Brown, John Graves, Yancy Redcorn, Alfonzo Chalepah, and Mary Rivera),[3] through various criminal acts, including mail fraud, wire fraud, and bank fraud. The Tribe also asserts pendent claims against various defendants under common law theories that include fraud and deceit, legal malpractice, breach of fiduciary duty, negligence, civil conspiracy, and conversion.

The movants seek dismissal of the action for lack of subject matter jurisdiction, failure of the Amended Complaint to state a claim upon which relief can be granted, and failure to plead fraud with particularity. While the Tribe characterizes its lawsuit as a civil RICO action, the movants contend the case is simply part of an ongoing intra-tribal dispute between competing factions, and that the Amended Complaint relies on an interpretation of tribal laws favorable to the current leaders but contrary to the understanding of the Tribe's former leaders and attorneys. The movants contend this Court lacks jurisdiction to interpret tribal laws or interfere in matters of tribal government, such as election disputes. This contention rests on a sound legal principle. *See Wheeler v. United States Dep't of Interior*, 811 F.2d 549, 551 (10th Cir. 1987); *see also White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980). However, the applicability of this principle depends on whether the Tribe's allegations in support of its federal claim implicate tribal sovereignty and

---

[3] *See* Am. Compl. [Doc. No. 108], ¶ 59. The last two defendants, Chalepah and Rivera, have neither answered nor moved for dismissal. However, no further action has been taken against these defendants since the Clerk entered Chalepah's default at the Tribe's request on September 30, 2010. As to these defendants, the Court finds that a dismissal without prejudice for failure to prosecute the action with reasonable diligence is appropriate, pursuant to Fed. R. Civ. P. 41(b). *See S.E.C. v. Power Res. Corp.*, 495 F.2d 297, 298 (10th Cir. 1974); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 632-33 (1962).

governmental matters. The Amended Complaint contains a litany of facts that are not linked to any particular claim, and thus, an analysis of the RICO claim is necessary to determine whether the action should proceed. Accordingly, the Court will first consider whether the Amended Complaint adequately states a RICO claim.

**Standard of Decision**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id*. at 679. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

Allegations of fraud are governed by the heightened pleading requirements of Rule 9(b), which provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud, and must set forth the time, place, and contents of the

3

false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726-27 (10th Cir. 2006) (internal quotations omitted); *see Tal v. Hogan,* 453 F.3d 1244, 1263 (10th Cir. 2006). To determine if factual allegations satisfy Rule 9(b), courts generally review only the text of the complaint. *See Sikkenga*, 472 F.3d at 726. "Exceptions to this general rule include the following: documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes [their] authenticity; and 'matters of which a court may take judicial notice.'" *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Toone v. Wells Fargo Bank*, 716 F.3d 516, 521 (10th Cir. 2013). The Court accepts "as true all well-pleaded facts, as distinguished from conclusory allegations, and view[s] those facts in the light most favorable to the non-moving party." *Sikkenga*, 472 F.3d at 726.

## Discussion

**A.     RICO Claim**

A violation of § 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff must, of course, allege each of these elements to state a claim." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002); *see also Tal*, 453 F.3d at 1269. "Racketeering activity" is defined in § 1961(1)(B) as any "act which is indictable" under certain federal criminal statutes. "These underlying acts are 'referred to as predicate acts, because they form the basis for liability under RICO.'" *Tal*, 453 F.3d at 1261 (quoting *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1102 (10th

4

Cir. 1999)). The predicate acts claimed by Plaintiff are mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and bank fraud (18 U.S.C. § 1344). *See* Am. Compl. [Doc. No. 108], ¶ 123.

        **1.**        **"Conduct" of an "Enterprise"**

The Supreme Court adopted in *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), the "operation or management" test for liability under § 1962(c). *See Tal*, 453 at 1269; *see also United States v. Hutchinson*, 573 F.3d 1011, 1033-34 (10th Cir. 2009). To establish that a defendant conducted the affairs of an enterprise, a plaintiff must show the defendant "participated in the operation or management of the enterprise," which means the defendant had "*some* part in directing the enterprise's affairs." *Reves*, 507 U.S. at 179 (emphasis in original). Persons who do not have a management or official position within an enterprise may be liable under § 1962(c) if they are "'associated with' the enterprise [and] . . . exert control over it." *Id*. at 184-85.

Regarding participation in an enterprise, the Amended Complaint states only that the "Co-Conspirator Defendants [identified as the individual defendants – Brown, Graves, Redcorn, Chalepah, and Rivera (*see supra* note 3)] were associated with the Silver Buffalo Casino and the future Red River Casino." *See* Am. Compl. [Doc. No. 108], ¶ 125. In response to the instant Motions, the Tribe argues both that the Silver Buffalo Casino was "a formal enterprise" operated or managed by the Co-Conspirator Defendants and there existed "an association-in-fact enterprise – Plaintiff's gaming interests, including development of the Red River Casino." *See* Pl.'s Resp. Def. Foshee & Yaffee Law Firm's Mot. Dism. [Doc. No. 118] at 8-9. The Tribe correctly states that "'an association-in-fact enterprise is simply a continuing unit that functions with a common purpose.'" *Id*. (quoting *Boyle v. United States*, 556 U.S. 938, 948 (2009)).

The Tribe points to no factual allegations in its pleading, however, that might establish the individual defendants participated in the operation or management of the Silver Buffalo Casino or an informal gaming enterprise. The only citations in the Tribe's brief regarding the RICO enterprise refer to paragraphs 17-26 and 40-55 of the Amended Complaint. *See id*. at 7-8. These paragraphs state that the Tribe opened the Silver Buffalo Casino in May, 2006, and was exploring the possibility of acquiring land to build another casino near the Red River; that Brown was hired to represent the Tribe and represented members of the Business Committee during an election dispute in 2006; that Brown, Redcorn, and Graves influenced the Business Committee to oust the Tribe's original gaming commissioners and replace them with persons they could control in late 2006 or early 2007;[4] that Brown, Redcorn, and Graves arranged for Redcorn's business associate, Kevin Kean, to obtain a lucrative interest in the Silver Buffalo Casino without disclosing their business relationship; that Brown, Foshee & Yafee, Graves, and Redcorn devised a means to obtain money from the Tribe's gaming operations by enlisting Kean to negotiate a loan from Wells Fargo Bank to the Tribe, the proceeds of which would net exorbitant fees for Brown, Foshee & Yafee, Graves, and Redcorn; that the resulting financial transaction gave Wells Fargo Bank, a gaming equipment lessor (TGS Anadarko, LLC), and Kean financial interests in the Tribe's gaming revenues; that Brown, Foshee & Yafee, and Graves provided inadequate legal advice or representation to the Tribe in connection with the transaction; and that Brown's father was the contractor hired with loan proceeds to remodel the Silver Buffalo Casino.

---

[4] The manner of control is not explained. The Amended Complaint also states a gaming board was created and Graves was one of its members, but the authority or role of this board is not explained.

The Court finds that the cited allegations do not suggest the Co-Conspirator Defendants, as the Amended Complaint refers to them, played any part in directing the affairs of the Silver Buffalo Casino or that the group "function[ed] as a continuing unit and remain[ed] in existence long enough to pursue a course of conduct" to control the Tribe's gaming interests, as now argued in Plaintiff's brief. *See Boyle*, 556 U.S. at 948. It would appear the "enterprise" identified by the Tribe "is simply the group of individual defendants accused of engaging in racketeering," and "Plaintiff has thus failed to allege an enterprise distinct from the individual defendants." *See Switzer v. Coan*, 261 F.3d 985, 992 (10th Cir. 2001).

For these reasons, and other reasons discussed *infra*, the Court finds the Amended Complaint fails to state a plausible RICO claim.

### 2. Predicate Acts of Fraud

Two predicate acts identified in this case – mail fraud and wire fraud – were also at issue in *Tal v. Hogan,* 453 F.3d 1244 (10th Cir. 2006), where the court of appeals explained as follows:

> To establish the predicate act of mail fraud, [the plaintiffs] must allege "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme." *Bacchus Indus., Inc. v. Arvin Indus., Inc*., 939 F.2d 887, 892 (10th Cir. 1991). *See United States v. Kennedy*, 64 F.3d 1465, 1475 (10th Cir. 1995). "The elements of wire fraud are very similar, but require that the defendant use interstate wire, radio or television communications in furtherance of the scheme to defraud." *BancOklahoma Mortgage Corp*., 194 F.3d at 1102 (internal quotation omitted).
>
>> [T]he common thread among . . . these crimes is the concept of "fraud." Actionable fraud consists of (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury.

7

> *Id*. at 1103. Failure to adequately allege any one of the nine elements is fatal to the fraud claim.

*Tal*, 453 F.3d at 1263. Further, "[a] plaintiff asserting '[mail] fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme.'" *Id*. (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992)). Like mail and wire fraud, bank fraud requires the existence of a scheme or artifice either "to defraud a financial institution" or to obtain money or property of a financial institution "by means of false or fraudulent pretenses, representations, or promises." *See* 18 U.S.C. § 1344. Thus, the pleading requirements for fraud are equally applicable to this type of predicate act. The particularity requirement of Rule 9(b) clearly applies to these fraud claims. *See Tal*, 453 F.3d at 1263; *see also Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002).

Despite the lengthy allegations of the Amended Complaint, the Court finds that it contains insufficient facts to state a plausible claim of fraud. Regarding bank fraud, the Tribe argues generally in its brief: "The RICO Defendants falsely represented to Wells Fargo the composition of the Business Committee, the authorization of the Business Committee to enter into the loan, and the status of another loan with a non-party." *See* Pl.'s Resp. Def. Foshee & Yaffee Law Firm's Mot. Dism. [Doc. No. 118] at 10. This statement is accompanied by a reference to paragraphs 63-73 of the Amended Complaint. These paragraphs recite facts regarding the closing of a loan transaction between the Tribe and Wells Fargo Bank on June 23, 2008. Included in these paragraphs are allegations that Brown and Foshee & Yaffee gave a legal opinion in connection with the loan that contained incorrect statements regarding the validity of a resolution of the Business Committee approving the loan, the authority of the Business Committee to approve and provide security for the loan, the validity of the loan agreement and related documents under the Indian Gaming Regulatory

Act, and the invalidity of the Tribe's loan agreement with a third party. The Amended Complaint states that Brown and Foshee & Yafee "wrongly opined" regarding these matters and that their opinion was given to Wells Fargo Bank to induce it to make the loan. *See* Am. Compl. [Doc. No. 108], ¶¶ 70-72. Notably, these paragraphs do not allege that Brown and Foshee & Yaffee made false representations of material fact on which Wells Fargo Bank reasonably relied in the loan transaction. *See Utah Power & Light Co. v. Federal Ins. Co.*, 983 F.2d 1549, 1556 (10th Cir. 1993) ("misrepresentations of law and opinions about the legal effect of contracts are not adequate bases for actionable fraud"); *see also* 26 Richard A. Lord, *Williston on Contracts* § 69:10 (4th ed. 2003) ("It is well settled that a claim of fraud in the making of a contract cannot generally be supported by proof of misstatements as to matters of law."). The Amended Complaint also does not allege Wells Fargo Bank suffered any injury as a result of its reliance on material misrepresentations of fact.[5]

The Tribe apparently relies on the same 2008 legal opinions to support predicate acts of mail fraud and wire fraud, arguing that "the Court can presume that the RICO Defendants used the mails and wire to perpetrate their fraudulent schemes" because loan documents regarding the June 23, 2008 loan from Wells Fargo Bank "were exchanged through U.S. mail and/or e-mail around the time of the closing of the loan." *See* Pl.'s Resp. Def. Foshee & Yaffee Law Firm's Mot. Dism. [Doc.

---

[5] The Tribe also argues that additional allegations in the Amended Complaint regarding statements made to Wells Fargo Bank in October, 2008, are pertinent to bank fraud, but no financial transaction with Wells Fargo Bank is alleged to have occurred at that time. Further, the Tribe argues that actions taken by unidentified "former members of the Business Committee" and "the RICO Defendants" in May, 2010, to transfer money in the Tribe's bank accounts from one institution to another were "acts of financial institution fraud." *See* Pl.'s Resp. Def. Foshee & Yaffee Law Firm's Mot. Dism. [Doc. No. 118] at 11. This argument is unexplained; no allegation is made that any financial institution was defrauded or lost any money as a result of the transfers.

9

No. 118] at 13. The Court notes that the Amended Complaint states the legal opinions provided by Brown and Foshee & Yaffee in connection with the loan "were given to Wells Fargo by mail and wire transmissions in May and June, 2008, to induce Wells Fargo to make the loan to the Apache Tribe." *See* Am. Compl. [Doc. No. 108], ¶ 72. As stated above, however, the Amended Complaint contains insufficient factual allegations to state a plausible claim of actionable fraud based on the June 23, 2008 loan transaction.

The Tribe also argues that the Amended Complaint sufficiently alleges mail and wire fraud "in regard to the RICO Defendants' communications and representations to the Department of the Interior in July and August 2008" as set forth in paragraph 75 of the Amended Complaint, and that the Department relied on these communications in the administrative decisions that followed, referencing paragraph 91. *See* Pl.'s Resp. Def. Foshee & Yaffee Law Firm's Mot. Dism. [Doc. No. 118] at 13-14. In fact, however, the Amended Complaint does not identify any particular communication with the Department nor the means of communication. The Tribe concedes in its brief that it does not know how or when the alleged communications were made, and it does not identify who made or who received them.[6] *See id*. Further, the Tribe concedes that the Department's alleged reliance on false information did not cause injury to the deceived party – the federal government – but instead injured the Tribe "because it allowed the attorneys and consultants to maintain control over the Apache Tribal government so they could continue helping themselves

---

[6] The Amended Complaint alleges in paragraph 91 that "some or all of the Co-Conspirators made multiple trips to Washington, D.C. to lobby the Department," thus indicating that communications occurred in person.

to the Wells Fargo loan proceeds and gaming revenues." *See id.*[7] Finally, in addition to the lack of particularity regarding any false statement and a lack of injury to the recipient, the Court takes judicial notice from its own records that the Tribe's factual allegations (that is, Marquita Carattini and Richard Banderas were improperly ousted from the Business Committee) are contrary to the Court's decision in prior litigation against the Department. *See Carattini v. Salazar*, Case No. CIV-09-489-D, Mem. Decision (W.D. Okla. Nov. 3, 2010). In short, the Amended Complaint fails to state a predicate act of mail or wire fraud perpetrated by the Co-Conspirator Defendants on the Department of Interior.

### 3.     Pattern of Racketeering Activity

"[T]o satisfy RICO's pattern requirement, [a plaintiff must] allege not only that the defendants had committed two or more predicate acts, but also that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (quoting *Hall v. Witteman*, 584 F.3d 859, 867 (10th Cir. 2009)) (emphasis in original). "'[T]he term pattern itself requires the showing of a relationship between the predicates and of the threat of continuing activity,' so that it is '*continuity plus relationship* which combines to produce a pattern.'" *United States v. Knight*, 659 F.3d 1285, 1288-89 (10th Cir. 2011) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)) (emphasis in original). While the relatedness of predicate acts is not difficult to establish, "[t]he showing required for 'continuity' . . . is more difficult to meet." *Bixler*, 596 F.3d at 761 (internal quotation omitted). "'Continuity' is both a closed- and open-ended concept, referring either to a

---

[7] The Court notes that this argument and other arguments throughout the Tribe's brief suggest that the gravamen of this action is control of its tribal government, not merely its gaming interests, as argued by the movants in support of their Rule 12(b)(1) motion.

11

closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.*, 492 U.S. at 241; *see also Bixler*, 596 F.3d at 761. "[C]ontinuity over a closed period" requires "a series of related predicates extending over a substantial period of time." *H.J.*, 492 U.S. at 242; *see also Boone v. Carlsbad Bancorp., Inc.*, 972 F.2d 1545, 1556 (10th Cir. 1992).

In this case, assuming the Amended Complaint states two or more predicate acts of mail, wire, or bank fraud, the Court finds insufficient facts to establish either a substantial period of related, repeated conduct or a threat that related conduct will be repeated in the future. Thus, the Amended Complaint fails to state a plausible RICO claim.

### 4. Leave to Amend

The Tribe does not request leave to further amend its pleading if the Court finds the Amended Complaint fails to state a RICO claim. "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortgage Electronic Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) (citing *Calderon v. Kansas Dep't of Soc. & Rehab. Svcs.*, 181 F.3d 1180, 1185-87 (10th Cir. 1999); *Glenn v. First Nat'l Bank*, 868 F.2d 368, 371 (10th Cir. 1989)). The Tribe does, however, assert that it should be allowed to conduct discovery to obtain the necessary information to plead predicate acts of fraud with particularity. *See* Pl.'s Resp. Def. Foshee & Yaffee Law Firm's Mot. Dism. [Doc. No. 118] at 18-21. The Tribe relies for this assertion on case law from other jurisdictions holding that where a plaintiff has outlined the fraudulent scheme but lacks specific information that is under the exclusive control of the defendant, "plaintiff should have an opportunity to flesh out her claim

12

through evidence unturned in discovery" and then amend the deficient complaint. *See Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1988); *see also New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290-91 (1st Cir. 1987). The Tenth Circuit, however, has declined to adopt "a hard and fast rule," affording the trial court "discretion instead to permit amendment of the defective pleadings if the circumstances warrant it." *See Cayman Explor. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362-63 (10th Cir. 1989). More recently, the Supreme Court has noted that the federal rules do not intend for insufficient pleadings to be "weeded out" through discovery. *See Iqbal*, 556 U.S. at 684-85; *Twombly*, 550 U.S. at 559.

In this case, the Court finds that the Tribe has failed to explain what circumstances have prevented it from stating a plausible RICO claim. Unlike a situation where third parties control access to information, the alleged predicate acts of fraud were committed by the Tribe's own leaders, lawyers, and consultants or representatives. Also, the Court is aware from its limited involvement in litigation between the Tribe and Wells Fargo Bank that a voluminous amount of information regarding their relationship and financial transactions has already been disclosed in court cases and related arbitration proceedings.[8] Any information provided to the Department of Interior in administrative proceedings to resolve election disputes or tribal leadership matters would be publicly available. In short, the Tribe has failed to explain why it lacks the necessary information to plead its RICO claim. Therefore, the Court finds that the Tribe has failed to justify its request to develop a plausible claim through discovery.

---

[8] *See Wells Fargo Bank v. Apache Tribe*, Case No. CIV-11-648-D, Complaint, (W.D. Okla. June 8, 2011); *Apache Tribe v. TGS Anadarko, LLC*, Case No. CIV-11-1078-D, Notice of Removal (W.D. Okla. Sept. 27, 2011); *Wells Fargo Bank v. Apache Tribe*, Case No. CIV-12-852-D, Notice of Removal (W.D. Okla. Aug. 6, 2012).

**B.     Common Law Claims**

"A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-640 (2009) (citing 28 U.S.C. § 1367(c)). However, the court of appeals has cautioned district courts: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotation omitted). Because the Court has decided to dismiss the Tribe's RICO claim – the only claim for which original jurisdiction existed – the Court declines to exercise supplemental jurisdiction over the Tribe's remaining claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the common law claims asserted by the Tribe will be dismissed without prejudice to refiling in an appropriate forum.

## Conclusion

For these reasons, the Court finds that the Amended Complaint fails to state an actionable RICO claim within the scope of federal subject matter jurisdiction,[9] and that the Court should decline to exercise supplemental jurisdiction over the Tribe's common law claims. Therefore, a dismissal without prejudice is appropriate.

---

[9] If the Amended Complaint were found to state a RICO claim, the Court would have grave concerns about involving federal courts in what appears to be an internal tribal dispute, as argued by the movants. However, the Tribe insists in its brief that this case is about a separate RICO enterprise. *See* Pl.'s Resp. Def. Foshee & Yaffee Law Firm's Mot. Dism. [Doc. No. 118] at 3-4. Accordingly, the Court finds that the jurisdictional issue raised by the movants is not presented for decision.

IT IS THEREFORE ORDERED that Defendants' Motions [Doc. Nos. 111, 112 & 113] are GRANTED, as set forth herein. This action is dismissed without prejudice to refiling.

IT IS SO ORDERED this 14th day of August, 2013.

*[signature]*

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE